# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JAMES BRADLEY H.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 23-2514-JWL |
| **MARTIN O'MALLEY,**[2] ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that the Commissioner's decision shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the Commissioner's final decision for further proceedings consistent with this decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff protectively filed an application for SSDI benefits on June 9, 2021.  (R. 10, 168-71).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ's residual functional capacity (RFC) as to both mental and physical limitations is unsupported by substantial evidence, that he erred in evaluating step five of the sequential evaluation process, and in any case he erroneously failed to consider a closed period of disability from September 22, 2020 through at least February 9, 2022.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

3

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court finds remand is necessary because the ALJ did not adequately explain his evaluation of Dr. Bleazard's opinion that Plaintiff must wear an AFO (ankle foot orthosis) brace.  Although the court finds little merit in Plaintiff's remaining arguments, having found remand is necessary it may not provide an advisory opinion on the remaining issues.  Plaintiff may address his remaining arguments to the Commissioner on remand.

**II.     Discussion**

Plaintiff claims the ALJ's physical RFC assessment is erroneous, in part, because the ALJ failed to include in his RFC assessment Dr. Bleazard's limitations which he apparently found persuasive. (Pl. Br. 10). He argues,

> Dr. Bleazard opined Plaintiff should not work at heights greater than 4 feet. (Tr. 643, 645). While the ALJ prohibited Plaintiff from unprotected heights in the RFC, the ALJ did not account for Dr. Bleazard's opinion Plaintiff could not work at heights greater than 4 feet in the RFC. (Tr. 23). The ALJ did not explain why, having found this portion of Dr. Bleazard's opinions persuasive, he did not include a limitation on working at heights of 4 feet or greater in the RFC. Likewise, Dr. Bleazard repeatedly opined Plaintiff must be permitted to wear his brace. (Tr. 643, 645). The ALJ did not include in the RFC and/or the hypothetical to the VE [(vocational expert)] the fact that Plaintiff must be permitted to wear his brace. (Tr. 23). The failure to account for these limitations and/or explain why the limitations were not included in the RFC is legal, reversible error. SSR [(Soc. Sec. Ruling)] 96-8p requires the ALJ to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p.

Id.

In response, the Commissioner points out that the ALJ rejected Dr. Bleazard's opinion that Plaintiff must not walk on uneven surfaces and may not squat and that the reasons given are supported by the record evidence. (Comm'r Br. 16-17). He then argues with respect to Dr. Bleazard's opinion limiting Plaintiff to working at heights of four feet or less and requiring the use of an AFO brace that the ALJ "found persuasive the portions of the prior administrative medical findings of Drs. Tawadros and Noll, the State agency physicians." Id. 17. He argues,

> The limitations they assessed tracked the ALJ's RFC assessment (Tr. 23), and they expressly assumed Plaintiff would be wearing his AFO (Tr. 71, 84). Moreover, an environmental restriction, such as a limitation on working at unprotected heights, is a limitation that "does not have a

5

> significant effect on work that exists at all exertional levels." Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *8-9.  Indeed, none of the jobs the ALJ found Plaintiff could perform at step five of the sequential evaluation required working at heights.

(Comm'r Br. 17-18).

In his Reply Brief, Plaintiff reiterates his argument (Reply 10) and responds to the Commissioner's assertion:

> The fact the ALJ found Dr. Tawadros and Dr. Noll's opinions persuasive does not diminish the fact that the ALJ also [accepted] the portions of Dr. Bleazard's opinion that Plaintiff could not work at heights of 4 feet or greater and must be permitted to wear his brace. (Tr. 26).  Defendant has identified yet another inconsistency or ambiguity which was not addressed and explained by the ALJ per SSR 96-8p.  The ALJ did not resolve the inconsistencies between Dr. Tawadros' and Dr. Noll's opinions and Dr. Bleazard's opinions.

Id. 11.

## A.     Legal Standard

As Plaintiff suggests, SSR 96-8p provides the standard to be applied in this case. The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." 1996 WL 374184, *1 (SSA July 2, 1996).  The ruling includes narrative discussion requirements for the RFC assessment. Id. at *6-7.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id., *7.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and

resolved.  Id.  The narrative discussion must include consideration of the credibility of the plaintiff's allegations of symptoms and consideration of medical opinions regarding the plaintiff's capabilities.  Id.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id.

**B.     The ALJ's Relevant Discussion**

The ALJ found Plaintiff's severe impairments include "left ankle ligament tear, left foot drop and left lower extremity peroneal nerve palsy status-post release surgery; and obesity."  (R. 20) (finding no. 3) (bold omitted).  He found Listing 1.17; Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint is not met because, "the medical evidence does not document a medical need to use an assistive device throughout the period under review."  Id. 22.

The ALJ assessed an RFC including limitations to stand and/or walk only four hours out of an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; only frequently balance; never use foot controls with his left leg; and never work at unprotected heights or with moving mechanical parts.  Id. 23.  The ALJ noted Plaintiff's testimony, "he has a bad club foot on the left, and he struggles with stairs and has fallen multiple times."  Id. 24.  He found, however, that Plaintiff's allegations of "symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Id.

> The ALJ discussed Plaintiff's impairments of his left leg and foot:
>
> Specifically, the evidence does not substantiate disabling left foot drop and left lower extremity peroneal nerve palsy, status-post release surgery.  The claimant treated at Kansas City Bone and Joint Clinic from November 2020

7

through June 2022, where he reported having numbness and weakness in the left lower leg. The claimant received a diagnosis of common peroneal nerve dysfunction of left lower extremity (Ex. 5F; Ex. 10F; Ex. 16F). In January 2021, the claimant underwent a left peroneal nerve release surgery at the knee (Ex. 16F, 1). The claimant treated at Kansas City Orthopedic Alliance in March 2022, where he received diagnoses of status-post release of common peroneal nerve and left foot drop (Ex. 12F). An electrodiagnostic test in February 2022 revealed chronic denervation of left lower extremity (Ex. 10F, 1). However, a[n] MRI test of the left lower extremity in January 2021 showed a grossly unremarkable peroneal nerve (Ex. 15F, 20-21). A[n] MRI test of the left knee in April 2022 revealed post-operative changes, but with no acute internal derangement and intact menisci, ligaments, and cartilage (Ex. 15F, 5-6; Ex. 16F, 11-12). The claimant also treated the problems with medications, physical therapy, and use of a brace (Ex. 16F, 1-2, 10, 15). Despite some findings of diminished strength, reduced range of motion, and antalgic gait, examinations produced normal physical findings, including normal strength, no crepitus, no erythema, no joint effusion, no extremity edema, normal pulses, and steady gait (See, e.g., Ex. 8F, 2, 5; Ex. 10F, 1; Ex. 16F, 1, 8). While the claimant initially used crutches following the left knee surgery, the medical evidence does not show the claimant required or received a prescription for an assistive device throughout the period under review.

The evidence does not substantiate a disabling left ankle ligament tear. The claimant treated at St. Paul Clinic from June 2019 through August 2021, where he reported having left ankle discomfort. The claimant received a diagnosis of acute left ankle pain (Ex. 7F; Ex. 8F). The claimant reported having left ankle pain during a visit at Kansas City Bone and Joint Clinic in November 2020, where he received diagnoses of sprain of left ankle, unspecified ligament, and acute left ankle pain (Ex. 5F, 29). A[n] MRI test of the left lower extremity that same month revealed left ankle joint effusion, left ankle edema, and tear of a ligament (Ex. 15F, 22-23). The claimant also reported having left ankle pain during a visit Kansas City Orthopedic Alliance [sic] in March 2022, where he received a diagnosis of left ankle inversion injury (Ex. 12F, 1). However, x-rays of the bilateral ankles in March 2022 revealed no acute changes, no degenerative changes, and normal alignment (Ex. 12F, 3-4). The claimant treated the problem with over-the-counter medications (Ex. 12F, 1). Despite some findings of slight tenderness, reduced range of motion of both ankles, some discoloration, and diminished sensation of the left foot, examinations produced normal physical findings, including no swelling, normal reflexes, normal pulses, and steady gait (See, e.g., Ex. 8F, 2; Ex. 12F, 2-3).

(R. 24-25).

The ALJ explained his consideration of Dr. Bleazard's opinion:

> I find partially persuasive the opinions of John Bleazard, D.O., which concludes the claimant is limited to no uneven surfaces, no lifting over 30 pounds below the knee, standing/walking for four hours in an eight-hour workday, no ladders, and no squatting (Ex. 16F/15-16). While the medical record does support severe impairments that limit, this is a Workers' Compensation report and the opinion of uneven surfaces and no squatting are not supported by the medical record treating notes showing the claimant had normal gait and was in no distress (Ex. 10F/1), had full painless range of motion of all joints and no distress (Ex. 10F/6), had a steady gait, no neurological motor deficits and in no distress (Ex. 8F/2), was in no distress and strength was unchanged (Ex. 16F/8), as well as the testimony of the claimant that can lift [sic] 30 pounds, stand 1–1½ hours at one time, walk 1 block at one time, sit 45-60 minutes at one time, is primary caregiver of children, sweeps/vacuums, does laundry, prepares simple meals, drives short distances, and goes to a store couple [sic] times a week. Therefore, I find the opinions partially persuasive.

(R. 26).

The ALJ explained his consideration of the prior administrative findings of the state agency medical consultants, Dr. Tawadros and Dr. Noll:

> I find partially persuasive the physical assessments of the State [sic] agency medical consultants, which conclude the claimant is limited to light work, with additional limitations of stand/walk for four hours in an eight-hour workday and sit for six hours in an eight-hour workday (Ex. 2A, 7-10; Ex. 4A, 8-12). The state agency consultants' assessments are generally consistent with the record. For example, a [n] MRI test of the left knee in April 2022 revealed post-operative changes, but with no acute internal derangement and intact menisci, ligaments, and cartilage (Ex. 15F, 5-6; Ex. 16F, 11-12). Examinations produced many normal physical findings (See, e.g., Ex. 8F, 2, 5; Ex. 10F, 1; Ex. 16F, 1, 8). While the claimant initially used crutches following the left knee surgery, the medical evidence does not show the claimant required or received a prescription for an assistive device throughout the period under review. Of note, the claimant testified at the hearing to having the ability to lift up to 30 pounds, but he has significant difficulty with standing/walking. This evidence supports a limitation to light work, with reduced standing/walking. However, the

>medical record also supports adding a limitation of never use left foot controls due to the left lower extremity impairments. Further limitations are not supported by the medical record including treating notes showing the claimant had normal gait and was in no distress (Ex. 10F/1), had full painless range of motion of all joints and no distress (Ex. 10F/6), had a steady gait, no neurological motor deficits and in no distress (Ex. 8F/2), was in no distress and strength was unchanged (Ex. 16F/8), as well as the testimony of the claimant that can lift [sic] 30 pounds, stand 1–1½ hours at one time, walk 1 block at one time, sit 45-60 minutes at one time, is primary caregiver of children, sweeps/vacuums, does laundry, prepares simple meals, drives short distances, and goes to a store couple [sic] times a week.

(R. 27-28).

The ALJ concluded,

>based upon the objective evidence, the claimant's course of treatment, their level of daily activity and their work history, I have determined that the claimant retains the residual functional capacity for with [sic] the limitations noted above, due to their left ankle ligament tear, left foot drop and left lower extremity peroneal nerve palsy status-post release surgery; and obesity. Considering all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision. There is evidence in the record that the claimant's impairments are not as severe as alleged and do not prevent them from performing basic work activities. Therefore, I find that there is a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities. The residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to their allegations of disability.

Id. 28.

### C.     Analysis

Regarding Plaintiff's argument the ALJ prohibited Plaintiff from unprotected heights in the RFC assessed but did not account for Dr. Bleazard's opinion Plaintiff could not work at heights greater than 4 feet, the court is at a loss to identify a conflict—or even

10

an ambiguity. The ALJ restricted Plaintiff from working at unprotected heights and that would include unprotected heights of 4 feet or greater. Dr. Bleazard cannot have viewed his 4-foot restriction as an <u>altitude</u> restriction, else he would have restricted Plaintiff from taking an elevator, from flying, and from climbing stairs, or would have provided some reference altitude from which to measure the 4 feet, such as above mean sea level, or above some atmospheric pressure in millibars or inches of mercury. Moreover, the court is not aware of, and Plaintiff does not suggest, any physical danger presented by a 4-foot change in altitude beyond the dangers presented by a potential fall—which would be prevented by being protected at that height. Plaintiff has simply not demonstrated an issue with this alleged error.

Plaintiff's argument the ALJ failed to account for Dr. Bleazard's opinion Plaintiff must wear an AFO brace or to explain why that limitation was not included in the RFC is, however, to the opposite effect. As Plaintiff suggests, after finding maximal medical improvement, Dr. Bleazard opined, "Work restrictions include no uneven surfaces, limit standing and walking to 4 hours per day, no lifting more than 30 pounds below the knee, no working at heights greater than 4 feet, must wear brace, no ladders, no squatting." (R. 654). Earlier, Dr. Bleazard had recommended Plaintiff "continue to ambulate in his double-upright AFO brace." <u>Id.</u> 582.

The ALJ explained why he rejected Dr. Bleazard's opinion Plaintiff could not walk on uneven surfaces and could not squat, and that explanation is supported by the record evidence. <u>Id.</u> 28. The ALJ adopted Dr. Bleazard's opinion Plaintiff was limited to standing/walking four hours a day and could not climb ladders, and as noted above, his

11

limitation from unprotected heights subsumes the limitation to heights no greater than four feet. Moreover, the ALJ's lifting/carrying limitations are more restrictive than Dr. Bleazard's limitation. However, the ALJ said nothing about Dr. Bleazard's opinion that Plaintiff must wear an AFO brace.

The Commissioner's argument the ALJ found persuasive the portions of Dr. Tawadros's and Dr. Noll's medical findings which tracked his RFC assessment and which expressly assumed Plaintiff would wear his AFO brace does nothing to resolve this issue. First, the ALJ stated in his decision, both when discussing "left foot drop and left lower extremity peroneal nerve palsy, status-post release surgery" (R. 24), and when considering the assessments of the state agency medical consultants, id. 27, that "the medical evidence does not show the claimant required or received a prescription for an assistive device throughout the period under review." Id. 25, 27. This can be viewed as a significant indication that the ALJ rejected the notion that Plaintiff required the use of an AFO brace. Second, the ALJ did not include in his hypothetical question to the VE that Plaintiff required the use of any brace despite the fact at the hearing, in the audio presence of the VE, both Plaintiff and his representative asserted he must use a brace. Id. 43, 50. Thus, while one might assume that the representative occupations suggested by the VE and relied upon by the ALJ do not preclude the use of an AFO brace, this court, the ALJ, the Commissioner's counsel, and Plaintiff are not experts in vocational matters and the record here does not include any evidence to support that assumption.

Remand is necessary for the Commissioner to affirmatively determine whether Plaintiff requires the use of an AFO brace, and if not, to explain why Dr. Bleazard's

12

opinion in that regard has been rejected.  If so, an AFO brace must be included as a limitation in the RFC assessed and in the hypothetical question asked of the VE.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this decision.

Dated September 6, 2024, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
